# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| PENELOPE WOOD, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | *No. 1:10-cv-243-JAW* |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises several issues: whether the administrative law judge relied on an "inadequate" expert medical opinion and, in so doing, impermissibly interpreted raw medical evidence, wrongly rejected the opinion of a non-examining physician, and wrongly failed to find her pancreatic condition to be severe. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from borderline small-fiber neuropathy of the lower extremities and obesity, impairments that were

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 18, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

severe but which did not, considered separately or in combination, meet or equal the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, Record at 9-13; that she retained the residual functional capacity ("RFC") to perform sedentary work, except that she could climb ramps and stairs only occasionally, crouch, crawl, and kneel less than occasionally, and never balance or climb ladders, ropes, or scaffolds, Finding 5, *id.* at 15; that she was capable of performing her past relevant work as a collections clerk and as a telemarketer, Finding 6, *id.* at 18; and that, therefore, she had not been under a disability, as that term is defined in the Social Security Act, at any time from August 17, 2007, the alleged date of onset of disability, through the date of the decision, Finding 7, *id.* at 19. The Decision Review Board did not complete its review of the decision during the time allowed, *id.* at 1-3, making the decision the final determination of the commissioner. 20 C.F.R. § 405.420(a).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20

C.F.R. §§ 404.1520(f), 416.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors also implicates Step 2 of the sequential process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## Discussion

### A. Expert Medical Opinion

The plaintiff first contends that the administrative law judge wrongly relied "on a medical opinion that referenced only a limited and an inadequate record." Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 12) at 4. Specifically, she asserts that the RFC assessment performed by Donald Trumbull, M.D., a state-agency medical consultant, to which the administrative law judge assigned "great weight," Record at 18, did not include a review records of her treatment after December 11, 2007, which include six hospital admissions relating to pancreatitis.[2] Itemized Statement at 5.

---

[2] The discharge diagnosis from one of these hospitalizations is given by the plaintiff as "surgery for ventral hernia." Itemized Statement at 5 n.8. The court has not been provided with sufficient information to allow it to conclude that this diagnosis is one that "relat[es] to pancreatitis." The administrative law judge believed that they were distinct. Record at 10. The record apparently suggests that the hernia was a result of the plaintiff's gastric bypass surgery. *Id*. at 12.

3

Dr. Trumbull's RFC form is dated December 17, 2007. Record at 296. He reviewed medical records dated as late as December 11, 2007. *Id*. The hearing before the administrative law judge was held on December 2, 2009. *Id*. at 20. The administrative law judge said the following about Dr. Trumbull's evaluation:

> The undersigned attributes great weight to the physical residual functional capacity assessment of Donald Trumbull, M.D. (Exhibit 6F). Dr. Trumbull is thoroughly familiar with the Social Security Administration disability standard and based his opinion on a full review of the medical evidence of record. His opinion is consistent with the medical evidence of record and the evidence of record as a whole.

*Id*. at 18.

Of course, Dr. Trumbull could not have seen the medical records dated after the date of his review. This court has held that the presence in the record of medical evidence not available to a state-agency physician-reviewer upon whose conclusions the administrative law judge relies may require remand, but only if the later evidence leads to an outcome different from that reached by the administrative law judge. *See, e.g., Brown v. Barnhart*, No. 06-22-B-W, 2006 WL 3519308, at *3 (D.Me. Dec. 6, 2006).

In the case at hand, the administrative law judge did not ignore the evidence of treatment after December 11, 2007, on which the plaintiff relies. She summarized it in the two single-spaced pages of the opinion preceding her mention of Dr. Trumbull's evaluation Record at 16-18. The plaintiff states, correctly, that an administrative law judge may not interpret raw medical evidence. *Manso-Pizarro*, 76 F.3d at 16. However, the mere fact that an administrative law judge has drawn a conclusion concerning medical evidence does not necessarily mean that she has done so in violation of this rule. *See, e.g., Rawson v. Astrue*, Civil No. 09-469-BW, 2010 WL 2923902, at *3 (D. Me. July 19, 2010).

Here, the administrative law judge considered the post-2007 medical records in reaching her conclusion that the plaintiff's alcoholic pancreatitis "did not last a continuous period of at least 12 months." Record at 10. A medical condition that has not lasted for a continuous period of at least 12 months cannot be an impairment. 20 C.F.R. §§ 404.1509, 416.909. The administrative law judge's conclusion does not require an interpretation of any raw medical evidence; duration of an impairment is a matter that can be determined, in most cases, by the application of common knowledge. Accordingly, whether Dr. Trumbull saw post-2007 medical records concerning the pancreatitis is irrelevant for purposes of this argument by the plaintiff.

The plaintiff also mentions small fiber neuropathy in this regard. Itemized Statement at 6, 7. However, the administrative law judge found that the plaintiff suffered from the impairment of small fiber neuropathy. Record at 9. The plaintiff asserts that Dr. Trumbull "could not find any explanation for the Plaintiff's complaints of bilateral lower extremity pain," *id*. at 7, but what Dr. Trumbull actually said at the cited page of the record is that there was "very little objective m[edical] e[vidence of] r[ecord] to support th[e] degree of symptomatology" described by the plaintiff in several respects. Record at 294. Even if the plaintiff's characterization of Dr. Trumbull's statement were correct, however, she does not indicate how the RFC assigned to her by the administrative law judge would necessarily have differed if Dr. Trumbull had seen the records of Dr. Bontia, the plaintiff's neurologist in 2008 and 2009.

Finally, the plaintiff cites "the review done by Dr. Rufael, in June, 2008," as critical evidence not seen by Dr. Trumbull. Itemized Statement at 6. Again, she does not suggest how the outcome of her claim would necessarily have been affected had Dr. Trumbull seen that review, or even how the review might have affected either Dr. Trumbull's opinion or the administrative law judge's conclusions. She says only that Dr. Rufael, a non-examining

5

physician who reviewed the medical evidence as of June 27, 2008, Record at 311, "assessed a more restricted RFC for the Plaintiff." Itemized Statement at 6.

Dr. Rufael assigned a capacity for sedentary work, Record at 306, the same as that assigned by the administrative law judge, *id*. at 15. He did assign a more restricted capacity for sitting, *id*. at 307, than did Dr. Trumbull, *id*. at 290, but the administrative law judge assigned no such limitation. He assigned manipulative limitations, *id*. at 308, while Dr. Trumbull did not, *id*. at 292, but again, the administrative law judge assigned none. He said that the plaintiff should never climb ladders or scaffolds, *id*. at 309, while Dr. Trumbull said that she could occasionally do this, *id.* at 291, and the administrative law judge adopted Dr. Rufael's limitation, *id*. at 15. Thus, whether Dr. Trumbull saw Dr. Rufael's conclusion on this point is immaterial.

Finally, Dr. Rufael assigned several environmental limitations, *id*. at 310, while Dr. Trumbull found none, *id*. at 293, and the administrative law judge found none, *id*. at 15. This is the only area in which Dr. Rufael's findings could possibly have influenced Dr. Trumbull's findings in a manner that could have affected the administrative law judge's ultimate determination, but limitations on exposure to unprotected heights; moving mechanical parts; operating a motor vehicle; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibrations, *id*. at 310, are all irrelevant to the jobs to which the administrative law judge found that the plaintiff could return, collections clerk and telemarketer, *id*. at 18. *See* Dictionary of Occupational Titles (U.S. Dep't of Labor rev. ed. 1991) at §§ 241.357-010 (collection clerk), 299.357-014 (telephone solicitor) (both listing extreme heat, extreme cold, wet and/or humid, vibration, moving mechanical parts, and high exposed places as "not present"). Accordingly, any potential change in Dr. Trumbull's conclusions caused by knowledge of Dr. Rufael's conclusions would be irrelevant on this point as well, and any error

6

caused by the administrative law judge's reliance on Dr. Trumbull's conclusions in this regard would be harmless.

It should also be noted that when an administrative law judge offers a reasonable explanation for concluding that records not seen by a particular state-agency reviewer "contain nothing sufficiently new and material to call into serious question" the conclusions of that reviewer, remand is not indicated. *Foltz v. Barnhart*, No. 04-219-B-W, 2005 WL 1353397, at *4 (D. Me. June 7, 2005). Here, the administrative law judge gave such an explanation. Record at 18.

### B. Rejection of Dr. Rufael's Source Opinion[3]

The administrative law judge indicated her approval and/or adoption of much of Dr. Rufael's report. *Id.* at 14-15, 18. Nonetheless, the plaintiff contends that his opinions, coming later in time, were "at least better informed" than those of Dr. Trumbull "and should have been given precedence over th[ose] of Dr. Trumbull" wherever they differ. Itemized Statement at 9. In fact, Dr. Rufael cites no medical records dated later than December 11, 2007, Record at 305, the same date as the most recent record reviewed by Dr. Trumbull. There is no basis, therefore, for a conclusion that Dr. Rufael's opinions were "better informed." In addition, and more important, the plaintiff cites no authority for her assertion. An administrative law judge is not required to adopt the opinion of one non-examining reviewer over that of another with which it differs merely because that opinion comes later in time. *See generally Strout v. Astrue*, Civil No. 08-181-B-W, 2009 WL 214576, at *8 (D Me. Jan. 28, 2009).

---

[3] The plaintiff uses the term "source opinion," Itemized Statement at 8, but it is clear that she refers only to Dr. Rufael's "statement of ability to do work-related activities," Record at 18, as that is the only portion of Dr. Rufael's report that differs from that of Dr. Trumbull and the limitations assigned by the administrative law judge.

7

## C. Step 2 – Pancreatitis

The final issue raised by the plaintiff's itemized statement is her assertion that the administrative law judge should have found her pancreatitis to be a severe impairment at Step 2 of the sequential evaluation process. Itemized Statement at 9-12. Here, the plaintiff tries to meet the additional requirement for claims of error at Step 2, that she demonstrate that the alleged error was not harmless, by contending that her history of hospitalization for treatment of pancreatitis[4] "for at least 24 days in a period of slightly over a year"[5] establishes that "[n]o employer would reasonably be expected to accommodate absenteeism at the level Ms. Wood was experiencing." *Id*. at 11.

Assuming *arguendo* that the failure to find the plaintiff's pancreatitis to be a severe impairment at Step 2 was an error, the plaintiff's appeal nonetheless fails because she cites no medical evidence that the severity of her pancreatitis and the rate of hospitalization would continue.[6] The test here is not, as the plaintiff would have it, whether "testimony []or medical evidence demonstrated that Ms. Wood's chronic pancreatitis had been cured or that there was medical improvement in her pancreatic condition." Itemized Statement at 12. That version of the legal test would put the evidentiary burden on the commissioner, at a point in the sequential evaluation process (Steps 2 and 4) where it remains with the claimant. I note further that only one of the records of treatment for pancreatitis characterizes it as "chronic," Record at 403;

---

[4] As previously noted, it is likely erroneous to count a hospitalization for surgery on a ventral hernia (March 27-29, 2009), Itemized Statement at 5 n.8, as in any way "involving or relating to pancreatitis," *id*. at 5. This removes 3 days from the plaintiff's count of days of hospitalization, and leaves a gap of almost 6 months between the first hospitalization for pancreatitis and the second.

[5] The actual period covered by the plaintiff's citations, Itemized Statement at 5 n.8, is nine months, not "slightly over a year."

[6] At least one court has found that pancreatitis, if it results from alcoholism, as is the case here, cannot provide the basis for a finding of disability under Social Security law. *Majewicz v. Astrue,* No. 09CV340A, 2010 WL 2541774 at *3 (W.D.N.Y. Feb. 22, 2010).

others describe the episodes for which she was treated as "acute."[7] *Id*. at 487, 527. After a two-day hospitalization on July 9 and 10, 2009, *id*. at 527, there is no suggestion of further treatment for the pancreatitis through the date of the hearing, December 2, 2009, *id.* at 7. *See also Jorgenson v. Astrue*, No. 08-3065-CV-S-ODS, 2009 WL 1028272, at *5 (W.D. Mo. Apr. 16, 2009) (recurring pancreatitis not severe impairment when episodes only strike three to four times a year).

At oral argument, the plaintiff's attorney asserted that the symptoms of fatigue and paresthesia[8] mentioned by Dr. Rufael had lasted at least 12 months, showing that the pancreatitis met the duration requirement. However, there is no indication in Dr. Rufael's reports that these symptoms were caused by pancreatitis. Record at 305-11. Fatigue and paresthesia can be symptoms of many different ailments. They are not necessarily medical evidence of pancreatitis.

When asked what evidence in the record demonstrated that the plaintiff's pancreatitis significantly limited her ability to do basic work activity, *See LaBonte v. Astrue*, Civil No. 09-358-P-S, 2010 WL 2024895, at *2 (D. Me. May 18, 2010), her attorney responded that the repeated hospitalizations over a period of nine months met this evidentiary requirement. However, he offered no medical evidence that would allow a reasonable factfinder to conclude that this rate of hospitalization would continue thereafter and, from all that appears in the record, it in fact did not.

Therefore, the plaintiff is not entitled to remand on this basis.

---

[7] The plaintiff complains that "[t]he judge classified these episodes as 'acute' without reviewing the chronic nature of the condition." Itemized Statement at 10. The plaintiff apparently expects the administrative law judge to reject the characterization of the condition by several of the relevant medical providers and to evaluate the nature of the ailment on her own, from the raw medical data. That is precisely what an administrative law judge must not do.

[8] Paresthesia is "[a]n abnormal sensation, such as of burning, pricking, tickling, or tingling." Stedman's Medical Dictionary (27th ed. 2000) at 1316.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of March, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge